IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS DRUSCH,

                                           OPINION AND ORDER

        Petitioner,

                                           10-cv-99-bbc

   v.

DEB McCULLOCH, Director,
Sand Ridge Secure Treatment Center,

        Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

After being adjudged a sexually violent person, petitioner Thomas Drusch was committed to the Wisconsin Department of Health and Family Services under Wis. Stat. Chapter 980 and confined at the Sand Ridge Secure Treatment Center in Mauston, Wisconsin. He filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he was denied his right to counsel at his commitment trial. From my review of the record and the opinion of the Wisconsin Court of Appeals, I conclude that the court did not act contrary to clearly established federal law in finding that petitioner had waived his right to counsel knowingly, voluntarily and intelligently. Therefore, I will deny petitioner's petition for a writ of habeas corpus.

1

The following facts are drawn from the state court record:

FACTS

A. Attorney Appointment History

On March 10, 2003, the District Attorney for La Crosse County petitioned the court for an order to detain petitioner Thomas Drusch as a sexually violent person under Wis. Stat. Chapter 980. Petitioner's first commitment trial in the Circuit Court for La Crosse County ended in a mistrial on October 13, 2004, when the jury could not reach a verdict. Dkt. #9, exh. 33, at 5. John Wabaunsee and Russell Hanson were appointed sequentially by the Wisconsin Office of the Public Defender to represent petitioner at trial. Wabaunsee withdrew because of a conflict of interest, id., exh.14, and Hanson withdrew after the first trial. Id., exh. 33 at 5.

Mark Huesmann was appointed as counsel on December 3, 2004 by the Office of the Public Defender. Dkt. #9, exh. 16. While Huesmann was representing petitioner, petitioner filed a pro se motion for summary judgment, contending that the circuit court lacked jurisdiction because he had not been served with a new petition to commit him after the first trial ended in mistrial. Id., exh. 25. On September 30, 2005, petitioner wrote to advise the court that he no longer wished to be represented by Huesmann and wished to proceed pro se on his motion to dismiss, pending appointment of new counsel. Id., exh. 18. At a hearing

2

on October 7, 2005, one month before petitioner's second commitment trial was to begin, the court allowed Huesmann to withdraw as petitioner's lawyer and continued the trial. The court advised petitioner that the Public Defender would appoint him another lawyer but that he would not get a replacement if that lawyer withdrew. Id., exh. 38.

On November 9, 2005, Richard Schaumberg was appointed by the Office of the Public Defender to represent petitioner. Dkt. #9, exh. 19. On August 11, 2006, a month before petitioner's re-scheduled second commitment trial was to begin, the court held a hearing on Schaumberg's motion to withdraw as petitioner's lawyer. The court had a conversation with petitioner on the record and concluded that petitioner did not want Schaumberg as his lawyer. The court informed petitioner that the Public Defender might not appoint him another lawyer and that it would be problematic if he had to proceed to trial without a lawyer. Id., at 5-6. Petitioner continued to ask the court to hear his pro se motion to dismiss. The court granted Schaumberg's motion to withdraw. Id.,, exh. 39, at 10-11. The court postponed the trial again and instructed petitioner to advise the court whether he was going to obtain another lawyer or proceed pro se.

On September 11, 2006, the court held a status conference in petitioner's case. A representative of the Public Defender's office appeared and stated that his office was willing to appoint petitioner another lawyer. Petitioner stated that he did not want a lawyer appointed to represent him. However, the court decided to have the Public Defender's office

3

appoint counsel for petitioner. Id., exh. 40. Laurie Osberg was appointed to represent petitioner on October 13, 2006. Id., exh. 22. Petitioner wrote her that there was a misunderstanding because he wanted her to represent him on his motion to dismiss and she planned to represent him at his commitment trial. Id., exh. 23 at:3.

Osberg moved to withdraw as petitioner's lawyer. The court held a hearing on December 1, 2006, at which it stated. "I'm not gonna force somebody to have counsel, and usually it's a good thing to have counsel if we set a trial." Dkt. #39, exh. 41. The court advised petitioner that, because it was granting Osberg's request to withdraw, petitioner would be representing himself at trial. The court asked petitioner whether he understood. He responded that he did and that Osberg could withdraw. The court asked petitioner whether he understood that the he would not be appointed another lawyer. Petitioner said that he did not need a lawyer. Id.

On December 11, 2006, the court denied petitioner's motion to dismiss the case. Id., exh. 42. At the April 2, 2007 pretrial hearing, petitioner told the court that he had never said he would represent himself. The court stated that petitioner was proceeding without representation. Id., exh. 43, at 4-5.

On April 9, 2007, before jury selection, petitioner informed the court that he did not wish to represent himself. The next day the court asked petitioner whether he understood that a lawyer would be able to help in presenting his case and that it would be difficult for

4

him to represent himself. The court asked petitioner whether he wished to reconsider his decision but petitioner refused to answer. Because petitioner did not respond to the court's questions, the court found he had forfeited his right to counsel. Dkt. #39, exh. 46, at 5-7. Although petitioner represented himself at trial, he chose to remain silent. On April 11, 2007, the jury found that petitioner was a sexually violent person. He was committed to the Department of Health and Human Services.. Id., exh. 31.

### B. Court of Appeals' Decision

Petitioner appealed the order committing him as a sexually violent person. Steven Weiss filed a no-merit report seeking to withdraw as appellate counsel. The court affirmed the commitment order and relieved Weiss of any further representation of petitioner.

The court specifically addressed petitioner's argument that he had not validly waived his right to counsel:

> Counsel contends that Drusch's conduct warranted a forfeiture of counsel. However, it appears the more relevant proper analysis is one of waiver, rather than forfeiture. That is, Drusch affirmatively waived his right to counsel on the record repeatedly stating that he wanted to pursue his *pro se* motions and that he did not want another attorney appointed, and the court's colloquy satisfied its independent responsibility to determine that Drusch's waiver of counsel was made knowingly, voluntarily and intelligently, and as a deliberate choice to proceed *pro se* with an awareness of the difficulties such self-representation entails.

The court found that although the trial court did not make a specific finding that petitioner was

competent to proceed pro se, the record showed that petitioner appeared able to converse logically about the trial and that none of the five lawyers representing him had raised any questions about his competency. Also, the court found that petitioner could not simply change his mind about wanting counsel at trial after he had told the court repeatedly that he did not want a lawyer appointed and wanted to proceed on his own. The court concluded that petitioner had waived his right to counsel.

Petitioner filed a petition for a supervisory writ in the Wisconsin Supreme Court, asking the court to summarily reverse the court of appeals' decision in light of Smith v. Grams, 565 F. 3d 1037 (7th Cir. 2009). The Supreme Court denied the petition for review.

OPINION

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, federal courts may grant a state prisoner habeas relief only if the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To grant habeas relief under the "contrary to" clause, a federal court

must find that the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000); Jackson v. Miller, 260 F.3d 769, 774 (7th Cir. 2001). To obtain relief under the "unreasonable application" clause, a habeas petitioner must show that the state court's decision unreasonably extended a clearly established Supreme Court precedent to a context in which it should not have applied or unreasonably refused to extend such precedent to a context in which it should have applied. Jackson, 260 F.3d at 774. The state court's factual findings are presumed correct unless the petitioner comes forward with clear and convincing evidence establishing that the findings were wrong. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 348 (2003).

Petitioner does not dispute the state court's factual findings. Rather, he contends that the Wisconsin Court of Appeals decision is contrary to clearly established federal law. He cites Faretta v. California, 422 U.S. 806 (1975), in which the United States Supreme Court held that a criminal defendant has the right to represent himself at trial, but that his waiver of counsel and his decision to represent himself must be voluntary and intelligent.

The Court of Appeals for the Seventh Circuit has applied the law in Faretta in several cases similar to petitioner's. In United States v. Hill, 252 F. 3d 919, 928-39 (7th Cir. 2001), the court found that the defendant had knowingly and intelligently waived his right to counsel when he stated he would represent himself after being informed by the court of the

7

dangers of proceeding pro se. In <u>United States v. Oreye</u>, 263 F. 3d 669, 670-71 (7th Cir. 2001), the court reached the same decision. Oreye had told the court six days before trial that he was dissatisfied with his counsel because counsel would not file a motion to dismiss. The judge gave Oreye a choice of keeping his lawyer, retaining his own lawyer or proceeding pro se and advised him of the dangers of self-representation. <u>Id.</u> at 672.

In <u>United States v. Traeger</u>, 289 F. 3d 461, 475 (7th Cir. 2002), Traeger fired his third lawyer a month before sentencing. He had already delayed his sentencing by almost two years by repeatedly requesting new lawyers. Traeger told the court that he wanted to proceed pro se and acknowledged that he had been advised earlier he would not be appointed another lawyer. The court of appeals held that Traeger's decision to go forward pro se was a sufficient waiver of his right to counsel. In <u>United States v. Alden</u>, 527 F. 3d 653, 661 (7th Cir. 2008), the court of appeals found that Alden had knowingly and intelligently waived the right to counsel, basing its decision on Alden's clear desire to so and the trial court's repeated warnings. Like petitioner, Alden had three lawyers who would not pursue various pro se motions he filed while represented. <u>Id.</u> at 657-58. Also, Alden had been warned of the risks of proceeding pro se. <u>Id.</u> at 661.

Petitioner argues that his case is like <u>Smith v. Grams</u>, 565 F. 3d 1037 (7th Cir. 2009), in which the court of appeals held that Smith's choice to proceed to trial representing himself was not a knowing and voluntary waiver of his right to counsel. <u>Id.</u> at 1046. The facts in

8

petitioner's case are different from those in Smith. Smith was not warned that he would not be appointed another lawyer if he fired the one he had. In fact, the trial court believed that another lawyer would be appointed for Smith and proceeded accordingly. Id. at 1045. The court of appeals found that Smith had not made a considered decision to proceed pro se but believed that he was getting another appointed lawyer and that the trial court had given him a Hobson's choice between adjourning the trial and giving up his right to a speedy trial or proceeding to trial without a lawyer. Id. at 1046.

Unlike Smith, petitioner was told as early as October 2005 that he might not be appointed another lawyer if the next lawyer withdrew. He was reminded of this again when his next lawyer withdrew on August 11, 2006. In September, the court appointed yet another lawyer, even though petitioner said that he did not want one. When that lawyer moved to withdraw, the court informed petitioner that he would be representing himself at trial and confirmed that petitioner understood that he would not be appointed another counsel. Petitioner's change of mind seven months later came too late. Unlike Smith, petitioner had knowingly and voluntarily waived his right to counsel in September 2006 when he said he did not want a lawyer and again on December 1, 2006 when he said that his appointed lawyer could withdraw and that he did not need a lawyer.

In determining that petitioner's waiver of counsel was made knowingly, voluntarily and intelligently, the court of appeals relied on the standard set forth in State v. Klessig, 211

9

Wis. 2d 194, 564 N.W.2d 716 (1997). In that case, the court drew on the Supreme Court's holding in Faretta, 422 U.S. 806, in finding that a criminal defendant had the right to represent himself. The court explained that to prove a valid waiver of counsel, the circuit court must conduct a colloquy to determine that defendant (1) had made a deliberate choice to proceed without counsel; (2) is aware of the difficulties and disadvantages of self-representation; (3) is aware of the seriousness of the charge or charges against him; and (4) is aware of the general range of penalties that could have been imposed on him. Klessig, 222 Wis. 2d at 206. In addition, the trial court must determine whether the defendant is competent to represent himself. Id. at 214. In petitioner's case, the court of appeals found that petitioner's waiver of counsel was consistent with the standard in Klessig. The court added that although the trial court had not made a record that petitioner was competent to proceed pro se, the record showed that petitioner appeared able to converse logically about the trial and that none of the five lawyers that had represented him had raised any questions about his competency to proceed.

    This finding by the court of appeals was not contrary to the holding in Faretta, 422 U.S. at 835, that petitioner's waiver of counsel must be voluntary and intelligent. The undisputed facts support the conclusion that petitioner's waiver of counsel was voluntary and intelligent. First, he made a deliberate choice to proceed without counsel. He was appointed three lawyers who withdrew at his request because he wanted to pursue a pro se motion to

10

dismiss his case. Appointed counsel Huesmann and Schaumberg each represented petitioner for almost a year before being asked to withdraw a month before petitioner's scheduled trial so that he could proceed pro se with his motion. Second, the court informed petitioner of the dangers of self-representation at the hearing on Schaumburg's motion to withdraw on August 11, 2006 and at the December 1, 2006 hearing on Osberg's motion to withdraw. Because petitioner had already had one commitment trial at which he was represented by counsel, he was aware of the seriousness of the charges against him, the penalties he faced and the nature of the proceeding. Over a period of almost three years, petitioner repeatedly told the court that he did not need a lawyer. It was not until the court denied his pro se motion that petitioner changed his mind and told the court at the pretrial conference that he did not wish to represent himself. By then the train had left the station. His waiver was in place.

The Wisconsin Court of Appeals' decision is consistent with the United States Supreme Court's holding in Faretta, 422 U.S. 806, and as applied in Hill, Oreye, Traeger and Alden. It is not contrary to clearly established federal law or an unreasonable application of such law. Therefore, I will dismiss petitioner's petition.

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the

11

denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one. For the reasons stated, reasonable jurists would not debate the decision that Drusch's petition should be dismissed because the Wisconsin Court of Appeals' decision that he had waived counsel for his commitment trial was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, no certificate of appealability will issue.

## ORDER

IT IS ORDERED that

1. Petitioner Thomas Drusch's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

2. Petitioner is DENIED a certificate of appealability. Petitioner may seek a certificate from the court of appeals under Fed. R. App. P. 22

Entered this 14th day of September, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge

13